UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 08-21865-CIV-GOLD/MCALILEY

ABC CHARTERS, INC., et al.

    Plaintiffs,

v.

CHARLES H. BRONSON, in his official
capacity as Commissioner of Agriculture,

    Defendant.

_____/

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

This CAUSE is before the Court on Plaintiffs' Motion for Summary Judgment [DE 100] and supporting memorandum of law and statement of undisputed facts . Defendant has filed a Response [DE 106-2] and Plaintiffs have filed a Reply [DE 111]. Oral argument on this Motion was further heard on April 10, 2009. I have carefully considered the parties' positions and the relevant law.  For the following reasons, I grant Plaintiff's Motion for Summary Judgment.

**I.**  **Background**

Plaintiffs filed their original Complaint [DE 1] and Motion for Preliminary Injunction [DE 3] on June 30, 2008.  Defendants filed a Motion to Dismiss for lack of jurisdiction and standing [DE 23] on July 17, 2008.  After extensive briefing and an evidentiary hearing on the Motion for Preliminary Injunction, I entered an Order on October 1, 2008 denying Defendant's Motion to Dismiss and granting Plaintiffs' Motion for Preliminary Injunction [DE 87] (the "Preliminary Injunction Order").

In the Complaint and Motion for Preliminary Injunction, Plaintiffs advanced a facial

challenge to the constitutionality of the amendments to the Florida Sellers of Travel Act, Fla. Stat. § 559.926 *et seq.*, enacted as SB 1310 ("An Act Relating to Sellers of Travel") effective July 1, 2008 ("Travel Act Amendments") and sought declaratory and injunctive relief to enjoin enforcement of the Travel Act Amendments by state officials. Plaintiffs are travel agencies and charter companies providing services to individuals traveling to Cuba or who wish to send humanitarian aid or family remittances to Cuba. The Travel Act Amendments, among other things, (1) require companies providing lawful travel related services to Cuba to post a bond in an amount of $100,000 or $250,000 while requiring those companies not offering travel to Cuba or other "terrorist states" to post a bond of $25,000; (2) allow the Defendant to use the bond to pay its own investigatory expenses without any limits to the exposure under the bond and prioritize the payment of the bond funds to the state over compensation to consumers; (3) permit the imposition of higher registration fees and fines on travel providers offering travel to Cuba; (4) automatically make any violation of federal law by Plaintiffs a third-degree felony under Florida law; and (5) require disclosure and identification by Plaintiffs of each company with whom each Plaintiff does any Cuba-related business or commerce, and make that information publicly available.[1]

Upon my review of Plaintiff's Motion for Preliminary Injunction, I concluded that Plaintiffs had established by a preponderance of the evidence that there was a substantial likelihood of success that Plaintiffs can demonstrate the unconstitutionality of the Travel

---

[1] As my Preliminary Injunction Order set forth the factual background concerning the Travel Act Amendments in considerable detail, I provide the factual background here only in summary form.

Act Amendments, on their face, insofar as the Travel Act Amendments violate the Supremacy Clause, where a comprehensive scheme of federal law and regulation preempted their passage, and violate the federal government's foreign affairs power, the Foreign Commerce Clause and the Interstate Commerce Clause. I further concluded that the Plaintiffs would be irreparably harmed, the threatened injury outweighed whatever damage the injunction may cause, and the injunction was not adverse to the public interest. Accordingly, a preliminary injunction enjoining the enforcement of the Travel Act Amendments was entered.[2]

In response to Plaintiffs' Motion for Summary Judgment, Defendant has put forth no evidence to dispute the facts as developed in the pleadings and exhibits related to the Motion for Preliminary Injunction and at the evidentiary hearing held on the Motion, at which Plaintiffs offered uncontested testimony concerning the economic effect of the Travel Act Amendments on their respective businesses. Further, Plaintiffs' Statement of Material Facts [DE 102] for the purpose of this present Motion is uncontested, though Defendant correctly points out that a number of the statements of fact are in fact statements of law.[3]

---

[2] My Preliminary Injunction Order reached Counts I-IV of Plaintiffs' Complaint, which alleged the Travel Act Amendments violated the Supremacy Clause, the foreign affairs power, the Foreign Commerce Clause, and the Interstate Commerce Clause. Because I concluded Plaintiffs had established a substantial likelihood of success on those grounds, I did not reach Plaintiffs' remaining counts (Counts V-IX) alleging a violation of the Equal Protection Clause of the Fourteenth Amendment, Plaintiffs' due process rights, the Takings Clause of the Fifth Amendment, the Eighth Amendment, and Plaintiffs' right to travel.

[3] Defendant asserts that paragraph 8 of Plaintiffs' Statement of Material Facts, concerning statements made by various Florida legislators regarding the Travel Act Amendments, is irrelevant to the disposition of this Motion. However, the design and intent of the Travel Act Amendments, while not necessarily material to the question of preemption, are relevant to whether the Travel Act Amendments violate the federal government's foreign affairs power, a power that is exclusive to the federal government.

Accordingly, the record before me for the purpose of resolving this Motion for Summary Judgment is the same as the record that was before me at the time I ruled on Plaintiffs' Motion for Preliminary Injunction. Additional briefing in this case has come in the form of a Statement of Interest filed pursuant to 28 U.S.C. § 517 by the United States on March 20, 2009 [DE 115], in which the United States argues that the Travel Act Amendments are preempted by federal law and violate the foreign affairs power and the Foreign Commerce Clause.[4]

## II. Jurisdiction

This Court has federal question jurisdiction to consider a case, such as this one, where the plaintiffs challenge an alleged deprivation of a Constitutional right by a State law. *See* 28 U.S.C. §§ 1331.

## III. Standard of Review

### A. Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure authorizes summary judgment when the pleadings and supporting materials show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it hinges

---

As discussed in detail in my Preliminary Injunction Order, I concluded that the Travel Act Amendments were enacted as a punitive measure against Cuba and businesses that do business with Cuba, and not as a law to enhance consumer protection.

[4] On September 18, 2008, the United States filed notice with this Court of its potential participation [DE 66]. On October 31, 2008, the United States advised the Court that because it was in agreement with the Preliminary Injunction Order, that the United States will continue to closely monitor these proceedings and will consider filing a Statement of Interest at a later stage in the litigation, if deemed necessary [DE 94].

on the substantive law at issue and it might affect the outcome of the nonmoving party's claim. *See id.* ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). The court's focus in reviewing a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252; *Bishop v. Birmingham Police Dep't*, 361 F.3d 607, 609 (11th Cir. 2004).

The moving party bears the initial burden under Rule 56(c) of demonstrating the absence of a genuine issue of material fact. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). Once the moving party satisfies this burden, the burden shifts to the party opposing the motion to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Celotex v. Catrett*, 477 U.S. 317, 324 (1986). A factual dispute is genuine only if the evidence is such that a reasonable fact finder could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248; *Denney v. City of Albany*, 247 F.3d 1172, 1181 (11th Cir. 2001).

In assessing whether the movant has met its burden, the court should view the evidence in the light most favorable to the party opposing the motion and should resolve all reasonable doubts about the facts in favor of the non-moving party. *Denney*, 247 F.3d at 1181. In determining whether to grant summary judgment, the court must remember that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255.

B.  Permanent Injunction

To obtain a permanent injunction, a party must show: (1) that he has prevailed in establishing the violation of the right asserted in his complaint; (2) there is no adequate remedy for the violation of this right; and (3) irreparable harm will result if the court does not order injunctive relief. *Alabama v. U.S. Army Corps of Engineers*, 424 F.3d 1117, 1128 (11th Cir. 2005). The standard for a permanent injunction is essentially the same as for a preliminary injunction, except that the plaintiff must show actual success on the merits instead of a likelihood of success. *Amoco Production Co. v. Village of Gambell*, 480 U.S. 531, 546 n.12, 107 S. Ct. 1396, 1404 n.12, 94 L. Ed. 2d 542 (1987) (citing *Univ. of Texas v. Camenisch*, 451 U.S. 390, 392, 101 S. Ct. 1830, 1832, 68 L. Ed. 2d 175 (1981)).

C.  Declaratory Judgment

The Declaratory Judgment Act ("DJA") provides that "any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). The DJA is "an enabling Act, which confers a discretion on courts rather than an absolute right upon the litigant." *Penn Millers Ins. Co. v. AG-Mart Produce Inc.*, 260 Fed. App. 175, 176 (11th Cir. 2007) (citations omitted). It gives federal courts the ability to make a declaration of rights, but it does not impose a duty to do so. *Id.* (citations omitted). "A declaratory judgment may only be issued in the case of an actual controversy." *Emory v. Peeler*, 756 F.2d 1547, 1552 (11th Cir.1985) (quotation marks omitted). To demonstrate an actual controversy, the facts as alleged or as reasonably inferred must show a substantial and continuing controversy that is real and immediate and creates a definite, rather than speculative threat of injury. *Id.* (internal citations omitted).

6

Further, a lawsuit brought under the DJA "must state some independent source of jurisdiction, such as the existence of diversity or the presentation of a federal question." *Borden v. Katzman*, 881 F.2d 1035, 1037 (11th Cir. 1989).

## IV.     Discussion

Having secured a preliminary injunction against the enforcement of the Travel Act Amendments, Plaintiffs now move for summary judgment and a permanent injunction against the enforcement of the Travel Act Amendments and further seek the entry of declaratory judgment that the Travel Act Amendments are unconstitutional. In my Preliminary Injunction Order, I concluded that (1) the Travel Act Amendments are designed and structured to end or seriously hamper federally licensed travel from Florida to Cuba, and that such a law is more than just a state consumer protection decision but also a political statement of condemnation of Cuba; (2) the significant burdens on travel and charter service providers impair the ability of this Nation to choose between a range of policy options in developing its foreign relations with Cuba; (3) the Airline Deregulation Act, which extends to indirect air carriers such as Plaintiffs, expressly preempts the Travel Act Amendments because they would have a significant effect on rates, routes or services; (4) the Travel Act Amendments conflict with, and are therefore preempted by, federal laws and regulations including the Trading with the Enemy Act and the Office of Foreign Assets Control's ("OFAC") Cuba Asset Control Regulations; (5) federal laws and regulations occupy the field as to regulation interactions and transactions with Cuba by persons and businesses in the United States; (6) the Travel Act Amendments impermissibly discriminate against the flow of foreign commerce and regulate conduct outside the borders of the United States; and (7) under the interstate commerce clause, the extensive web of federal

laws regulating business with and travel to Cuba displaces state laws such as the Travel Act Amendments.

The United States is in substantial agreement with these conclusions. According to its Statement of Interest, the State of Florida enacted the Travel Act Amendments "in an attempt to conduct its own foreign policy," and "the very existence of the legislation . . . impairs the federal government's ability to present a single, unified foreign policy on behalf of the United States when dealing with other countries." [DE 115 at 25, 26].

> The United States Constitution vests exclusive authority for the conduct of foreign relations in a single, national government. This structure ensures that the United States is able to speak with one voice when managing relations with other nations. Pursuant to its constitutional authority, Congress has enacted numerous federal statutes pertaining to relations with the countries that the Executive Branch designates as state sponsors of terrorism. Some of these federal statutes mandate aspects of the sanctions imposed on the designated states, while others give the Executive Branch broad authority and flexible tools to regulate transactions with these countries. Congress specifically has addressed travel to the designated states under current sanctions regimes. With regard to Cuba, Congress has passed several laws governing permitted travel, while leaving the Executive Branch discretion to adjust many aspects of the travel regulations as circumstances dictate . . . . The Executive Branch has in turn promulgated comprehensive regulations governing . . . travel to Cuba. These regulations are designed to balance multiple, competing foreign policy considerations and achieve important, often changing, foreign policy objectives.

*Id.* at 1-2. The United States argues that the Travel Act Amendments interfere with the exercise of this "exclusive" and "broad" authority. *Id.* at 20-21. Specifically, federal regulations impose significant restrictions on travel to Cuba, but permit travel to Cuba in instances that promote the goal of a "peaceful transition to democracy" in that country or serve other foreign policy interests. By imposing significant burdens, beyond those already imposed under federal law, on entities that provide travel services to Cuba, the Florida

Amendments will limit travel that the federal government has deemed consistent with U.S. foreign policy objectives. *Id.* 21-22. Further, the Travel Act Amendments "interfere with federal determinations about the appropriate type of penalties to impose when violations of federal law occur." *Id.* at 23. By allowing Florida to impose its own penalties for the violation of federal laws relating to commerce with designated states, the Florida Amendments undermine the federal government's "calibration of force" and its judgment about the best way to enforce sanctions to achieve U.S. foreign policy objectives. *Id.* 24.

Defendant's opposition to Plaintiffs' Motion for Summary Judgment [DE 106-2] is in essence a recitation of the amicus brief opposing the Motion for Preliminary Injunction filed by the Florida House of Representatives [DE 62], which Defendant adopted as his brief on the merits of the preliminary injunction. Given the absence of any material changes in the record evidence before me or the legal arguments presented, Defendant has offered no reason why the conclusions set forth in detail in my Preliminary Injunction Order should now change. Indeed, recent developments further indicate our nation's changing foreign policy objectives with respect to Cuba, further counseling against permitting the Travel Act Amendments from going into effect. I take judicial notice that OFAC has recently issued, in response to the Omnibus Appropriations Act, 2009, a general license permitting an expanded range of family travel to permit visiting close relatives in Cuba from once every three years to once every year. *General License for Visits to Close Relatives in Cuba*, OFAC Cuban Assets Control Regulations, Mar. 11, 2009.[5] Even more

---

[5] Available at http://www.treas.gov/offices/enforcement/ofac/programs/cuba/gl_omni2009.pdf (last visited April 13, 2009); *see also* 69 Fed. Reg. 33775 (Jun. 16, 2004).

recently, President Barack Obama announced on April 13, 2009 that the restrictions on family travel, and remittances and gifts to Cuba will be lifted and Cuban Americans will now be permitted to travel freely to the island and send as much money as they want to their family members, in a marked reversal of the United States' prior policy. *Obama Opens Door to Cuba, but Only a Crack*, N.Y. Times, Apr. 13, 2009, A6. Such changes in foreign policy with respect to Cuba further demonstrate that the Travel Act Amendments interfere with this country's foreign policy objectives. As the United States represented at oral argument, these recent changes aptly demonstrate that the Travel Act Amendments would undermine the power of the federal government to act on behalf of the entire nation with respect to our relations with Cuba.

*The State of Florida is not entitled to adopt a foreign policy under our Constitution or interfere with the exclusive prerogative of the United States to establish a carefully balanced approach to relations with foreign countries, including Cuba.*[6] Therefore, I conclude, for the reasons set forth in my Preliminary Injunction Order, that Plaintiffs have prevailed in establishing the constitutional violations asserted in Counts I-IV of their Complaint. I further adopt fully, and incorporate by reference, the position of the United States, as set forth in its Statement of Interest. Accordingly, Plaintiffs are entitled to summary judgment and a permanent injunction.

Further, as discussed in my Preliminary Injunction Order, the facts as alleged and the evidence before me indicate that there exists an actual controversy between the

---

[6] Counsel for Defendant conceded at oral argument that Florida cannot engage indirectly in foreign policy through onerous regulation "if [such regulation] has a real effect on the foreign affairs power. Tr. Apr. 10, 2009, 31:6-22.

parties. Plaintiffs have demonstrated that if I were to conclude that the Travel Act Amendments pass constitutional muster, this legislation would be enforced imminently and cause significant harm to Plaintiffs. This dispute is substantial and continuing and, based on the uncontested prior testimony of Plaintiffs at the preliminary injunction hearing, represents a direct threat of injury to their financial interests. Absent any ongoing related actions concerning the constitutionality of the Travel Act Amendments that would counsel against the exercise of my discretion under the DJA, Plaintiffs are granted declaratory relief. *Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1330-31 (11th Cir. 2005) (outlining nine factors that a district court should consider in determining whether to accept or decline jurisdiction under the DJA when a related state action is pending). Accordingly, it is hereby

ORDERED and ADJUDGED that

1. Plaintiffs' Motion for Summary Judgment [DE 100] as to Counts I-IV of the Complaint is GRANTED. In so granting, I incorporate by reference this Court's Order Denying Motion to Dismiss and Granting Preliminary Injunction [DE 87], as further modified by this Order.

2. Defendant is permanently enjoined from implementing or otherwise enforcing the Travel Act Amendments. The Florida Sellers of Travel Act, Chapter 559, Part IX, Florida Statutes, remains unaffected by this Order.[7]

---

[7] Although Plaintiffs at oral argument represent for the first time that they do not challenge the specific portions of the Travel Act Amendments that removed the ability of *all* sellers of travel to use of letters of credit or certificates of deposit in lieu of posting a required bond, I confine this Order to the injunction against enforcement of the legislation, as sought by Plaintiffs in their Motion, and leave for the Florida legislature to act in accordance with this Order with respect to future proposed amendments to the Florida

3.  Declaratory judgment is entered in favor of Plaintiffs. The Travel Act Amendments are unconstitutional insofar as they are preempted by federal law and violate the foreign affairs power, the Foreign Commerce Clause, and the Interstate Commerce Clause.

4.  This case is CLOSED. I reserve to address Counts V-IX of the Complaint in the event this Order is remanded for further consideration.

5.  All pending Motions are DENIED as moot.

DONE and ORDERED in Chambers in Miami, Florida, this 14 day of April, 2009.

THE HONORABLE ALAN S. GOLD
UNITED STATES DISTRICT JUDGE

cc:
All counsel of record
U.S. Magistrate Judge Chris M. McAliley

---

Sellers of Travel Act.