UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-21865-CIV-GOLD/MCALILEY

ABC CHARTERS, INC., *et al.*,

    Plaintiffs,

v.

CHARLES H. BRONSON, in his
official capacity as Commissioner of
Agriculture,

    Defendant.
_____/

**REPORT AND RECOMMENDATION ON PLAINTIFFS'
VERIFIED MOTION FOR ATTORNEYS' FEES, COSTS,
AND EXPENSES AND PLAINTIFFS' BILL OF COSTS**

Pending before this Court are Plaintiffs' Verified Motion for Attorneys' Fees, Costs and Expenses [DE 121, 122], and Bill of Costs [DE 123].[1] Plaintiffs seek to recover their attorneys' fees, expert fees and litigation expenses from Defendant pursuant to 42 U.S.C. § 1988, and to recover costs pursuant to Federal Rule of Civil Procedure 54(d)(1) and 28 U.S.C. § 1920. The Motion has been fully briefed and is ripe for resolution.[2] No response was filed in opposition to the Bill of Costs. For the reasons that follow, I recommend that the Motion be granted in part, and that the Bill of Costs be granted in full.

---

[1] The Motion and Bill of Costs were referred by the Honorable Alan S. Gold. [DE 124].

[2] Defendant filed a response in opposition [DE 128], and Plaintiffs filed a reply [DE 129].

## I. Background

Plaintiffs, travel agencies and charter companies that provide services to those traveling to Cuba or who wish to send humanitarian aid or family remittances to Cuba, brought this lawsuit challenging the constitutionality of the amendments to the Florida Sellers of Travel Act, Fla. Stat. § 559.926 *et seq.*, enacted as SB 1310, effective July 1, 2008 (Travel Act Amendments). [DE 1]. Plaintiffs alleged that the purpose and effect of the Travel Act Amendments was to end or seriously hamper federally licensed travel from Florida to Cuba, and sought declaratory and injunctive relief to enjoin the State's enforcement of the Travel Act Amendments and to declare the Travel Act Amendments unconstitutional. [*Id.*].

After extensive briefing and an evidentiary hearing, the Court granted Plaintiffs' Motion for Preliminary Injunction, finding, among other things, that there was a substantial likelihood that the Travel Act Amendments would be found unconstitutional under various constitutional provisions. [DE 87]. Thereafter, on April 14, 2009, the Court granted Plaintiff's Motion for Summary Judgment, permanently enjoined the implementation and enforcement of the Travel Act Amendments, and declared that the Travel Act Amendments unconstitutional insofar as they are preempted by federal law and violate the foreign affairs power, the Foreign Commerce Clause, and the Interstate Commerce Clause. [DE 118]. Final judgment in favor of Plaintiffs was entered on April 14, 2009. [DE 120].

Plaintiffs now seek attorneys' fees in the amount of $356,136.25, plus enhancement of 2.5 times the lodestar, $13,637.50 for expert fees, and $22,218.16 for litigation expenses.

[DE 122, pp. 13-14, 16]. Plaintiffs seek additional costs, pursuant to their Bill of Costs, in the amount of $8,074.00. [DE 123].

## II.     Analysis

### A.     Attorneys' Fees

Plaintiffs claim entitlement to attorneys' fees under 42 U.S.C. § 1988, which provides for an award of attorneys' fees to the prevailing party. Specifically, § 1988 states: "[i]n any action or proceeding to enforce a provision of . . . [42 U.S.C. §] 1983 . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . . . In awarding attorney's fees . . . the court, in its discretion, may include expert fees as part of the attorney's fee." 42 U.S.C. § 1988(b) and (c). *See also Kenny A. ex rel. Winn v. Perdue*, 532 F.3d 1209, 1219 (11th Cir. 2008), *cert. granted,* 129 S.Ct. 1907 (2009).

It is undisputed that Plaintiffs brought their claims under 42 U.S.C. § 1983, and are the prevailing parties; Defendant concedes Plaintiffs are entitled to recover their reasonable fees. [DE 128, p. 1]. The starting point in determining what fees are reasonable is to multiply the number of hours reasonably expended by Plaintiffs' counsel, by a reasonable hourly rate, resulting in a "lodestar" amount. *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). The lodestar may then be adjusted under certain exceptional circumstances. *Id., see also Kenny A.*, 532 F.3d at 1220. The moving party bears the burden of providing the court with sufficiently detailed

records so that the court can assess the time claimed for each activity; Plaintiffs here must also provide information that supports the proposed hourly rate for their counsel. *Norman v. Housing Authority of the City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988).

   1. **Reasonable hourly rate**

A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience and reputation. *Id.* at 1299. Plaintiffs seek the following hourly rates for their counsel: **$450** for Ira J. Kurzban, **$400** for Steven M. Weinger, **$350** for Helena Tetzeli, **$325** for Geoffrey A. Hoffman, **$225** for Lacy L. Brinson, and **$125** for paralegals and law clerks. [DE 122, p. 13].

In evaluating the reasonableness of these rates, this Court reviewed the qualifications of Plaintiffs' counsel [DE 122-1; 122-3; 122-4; 122-5; 122-6], the Affidavits of Louis M. Jepeway, Jr. and G. Richard Strafer, Esq. filed in support of the Motion for fees [DE 122-7, 122-8], and the record in this action. Pulling together all this information, and noting that Defendant does not dispute the reasonableness of these rates, this Court concludes on this record that the hourly rates sought by Plaintiffs for their counsel are reasonable. *See Loranger*, 10 F.3d at 781 (the court "is itself an expert on the question [of a reasonable hourly rate] and may consider its own knowledge and experience . . .").

   2. **Hours reasonably expended**

The second half of the lodestar equation is the hours reasonably expended. Plaintiffs state that their counsel spent a total of 1,185.7 hours litigating this matter, including the time

devoted to preparing the petition for fees.[3] [DE 122, p. 13]. Plaintiffs argue that these claimed hours (and their counsel's hourly rate) are reasonable in light of the twelve factors enumerated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-719 (5th Cir. 1974).[4] Defendant challenges the time billed because in most instances, it was recorded in quarter hour increments (rather than one tenth hour increments), which Defendant argues artificially inflates the number of hours billed. [DE 128, pp. 4-5]. For this reason, Defendant asks the Court to reduce, by 10%, the number of hours for which Plaintiffs are compensated. [*Id.*].

Other than its challenge to the quarter hour billing increments, Defendant does not claim that any specific time entries reflect "excessive, redundant or otherwise unnecessary" time. *See Norman*, 836 F.2d at 1301. Neither does Defendant argue that any specific entries are vague or otherwise unrecoverable. I have reviewed the specific time entries on the billing records provided by Plaintiffs' counsel [DE 122-1; 122-2], and find that they were reasonably incurred in light of the twelve *Johnson* factors. Defendant is correct, however, that the vast majority of entries are billed in quarter hour increments.

---

[3] Counsel's time preparing a motion for fees is recoverable. *See Johnson v. Univ. of Alabama*, 706 F.2d 1205, 1207 (11th Cir. 1983).

[4] The twelve *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Although the Eleventh Circuit Court of Appeals has not yet ruled on the issue, our sister courts in this Circuit and in other jurisdictions have reduced fee awards where time entries were rounded to the nearest fifteen minutes. *See, e.g., Ramsey v. State of Alabama Public Service Comm'n*, No. CIV. A. 96-T-275-N, 2000 WL 426187, at *4-5 (M.D. Ala. April 13, 2000) (finding that rounding to the nearest quarter hour "could result in a substantial windfall to the attorneys," and reducing each fifteen minute time entry by one-eighth of an hour); *Inman v. Apfel*, No. 3:97-CV-1273-J-HTS, 2000 WL 1221858, at *2-3 (M.D. Fla. July 14, 2000) (same); *George v. GTE Directories Corp.,* 114 F.Supp. 2d 1281, 1292-93 (M.D. Fla. 2000) (where the attorney primarily billed in half hour and quarter hour increments, the court reduced the number of hours by 30%); *Dzwonkowski v. Dzwonkowski,* No. 05-0544-KD-C, 2008 WL 2163916, at *26 (S.D. Ala. May 16, 2008) (reducing each time entry recorded as .25 to .1); *Hagen v. MRS Associates, Inc.*, No. Civ. A. 99-3749, 2001 WL 531119, at *4-5 (E.D. La. May 15, 2001) (reducing fee award by 10% to account for the inadequacy of quarter-hour billing increments).

I have carefully reviewed the time entries and it appears that Plaintiffs' counsel has in most instances rounded to the quarter hour. [DE 122-1; 122-2]. As noted in the cases cited above, this practice does not accurately reflect the number of hours spent on each task and is very likely to inflate the time Plaintiffs' attorneys devote to this case. While Plaintiffs correctly argue that not every single time entry was billed by the quarter hour [DE129], the large majority of entries were billed this way, and I conclude that a reduction in hours is

appropriate. One problem with this billing approach is that the Court can not independently determine which, if any, of the quarter hour billing entries may be justified; this makes a line by line review of Plaintiffs' voluminous time records futile. *See Hagen, supra*; *see also Kenny A.*, 532 F.3d at 1220 ("where the billing records are voluminous . . . a district court may make a reasonable across the board reduction in hours instead of engaging in the pick and shovel work necessary to make a more precise determination."). I believe Defendants' recommendation of a 10% across the board reduction is reasonable, and I recommend that it be implemented.

Reducing the hours claimed by each attorney and paralegal by 10% results in the following recoverable hours [*see* DE 122, p. 13; 122-2]:

| Attorney | Hours Billed | 10% Reduction | Recoverable Hours |
|---|---|---|---|
| I. Kurzban | 172.20 | 17.22 | 154.98 |
| S. Weinger | 138.05 | 13.805 | 124.245 |
| H. Tetzeli | 224.35 | 22.435 | 201.915 |
| G. Hoffman | 65.65 | 6.565 | 59.085 |
| L. Brinson | 449.00 | 44.9 | 404.1 |
| Law Clerks | 104.75 | 10.475 | 94.275 |
| Supplemental Billing: | | | |
| I. Kurzban | 7.5 | .75 | 6.75 |
| S. Weinger | 2.7 | .27 | 2.43 |
| H. Tetzeli | 1.25 | .125 | 1.125 |
| L. Brinson | 20.25 | 2.025 | 18.225 |

When the Court excludes these hours, **the lodestar** is calculated as follows:

| Attorney | Recoverable Hours | Rate | Total |
| --- | --- | --- | --- |
| I. Kurzban | 154.98 | $450.00 | $69,741.00 |
| S. Weinger | 124.245 | $400.00 | $49,698.00 |
| H. Tetzeli | 201.915 | $350.00 | $70,670.25 |
| G. Hoffman | 59.085 | $325.00 | $19,202.63 |
| L. Brinson | 404.1 | $225.00 | $90,922.50 |
| Law Clerks | 94.275 | $125.00 | $11,784.38 |
| Supplemental Billing: | | | |
| I. Kurzban | 6.75 | $450.00 | $3,037.50 |
| S. Weinger | 2.43 | $400.00 | $972.00 |
| H. Tetzeli | 1.125 | $350.00 | $393.75 |
| L. Brinson | 18.225 | $225.00 | $4,100.63 |
| | | | |
| | | **TOTAL LODESTAR** | **$320,522.64** |

### 3. Adjustment of the Lodestar

Plaintiffs seek an enhancement of 2.5 times the lodestar amount. [DE 122, p. 14]. The Supreme Court has determined that the proper calculation of the lodestar leaves "very little room" for enhancements, however the Eleventh Circuit has found that enhancements may be appropriate in "rare" and "exceptional" cases. *Kenny A.,* 532 F.3d at 1233 (citing *Pennsylvania v. Del. Valley Citizens' Council for Clean Air,* 478 U.S. 546, 565-66 (1986)

(*Delaware Valley I*).  After careful review of the record, this Court does not recommend an enhancement to the lodestar.

In support of an enhancement Plaintiffs argue that this case was undesirable because it generated a great deal of emotion among members of the large Cuban-American community in Miami, some of whom consider travel to Cuba a form of treason and at times have been vocal and violent in their opposition to travel to Cuba.  [DE 122, p. 15; 122-1, ¶ 16].  Plaintiffs also seek an enhancement of the fee award on the basis of:  (1) the preclusion of employment due to the acceptance of the case; (2) losing potential business because of the controversial nature of the case; and (3) harm to the firm's image because Florida legislators publicly called Plaintiffs "agents of the Castro government," which received a high level of media attention in Miami, Florida "with the largest Cuban exile population in the Untied States."  [DE 122, pp. 15-16].

The law here is clear that there is a strong presumption that the lodestar amount represents a reasonable attorneys' fee and the burden is on the fee applicant to show that "such an adjustment is *necessary* to the determination of a reasonable fee."  *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992) (emphasis in original) (quoting *Blum v. Stenson,* 465 U.S. 886, 898 (1984).  Plaintiffs have not met this burden.

To begin, my determination of the lodestar is based, in part, upon consideration of the undesirability of the case, as it is one of the *Johnson* factors.  Therefore, Plaintiffs' first argument for enhancement has been subsumed in the initial calculation of the lodestar.  *See*

*Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1352 (11th Cir. 2008) ("The *Johnson* factors are to be considered in determining the lodestar figure; they should not be reconsidered in making either an upward or downward adjustment to the lodestar - doing so amounts to double-counting.") (citing *Burlington*, 505 U.S. at 562-63.)  Likewise, preclusion of employment is also subsumed in the calculation of the lodestar.[5]

Plaintiffs' remaining grounds for enhancement - losing potential business because of the controversial nature of the case and harm to firm's image - are equally unpersuasive.  In dicta, the Eleventh Circuit in *Kenny A*. observed that an enhancement of the lodestar may be appropriate in a case where, "for example, . . . an attorney's representation vindicates the federal rights of an unpopular client and as a result that attorney suffers a loss of standing in the community which damages his practice and income."  *Kenny A.*, 532 F.3d at 1233.[6]  Plaintiffs' counsel argue that they fit within this narrow exception.  I am not persuaded.

There is no question that some members of this community condemned Plaintiffs' counsel's efforts to have this Court declare the Travel Act Amendments unconstitutional; yet

---

[5] In the Affidavit of Ira J. Kurzban, Esq., submitted in support of Plaintiffs' Motion, Mr. Kurzban asserts additional grounds for enhancement not mentioned in the Motion - the success of Plaintiffs' counsel and the favorable results obtained. [DE 122-1, ¶ 16]. Favorable results in a case can stem from superior lawyering by counsel, which is not a proper basis for an enhancement. *Kenny A.*, 532 F.3d at 1231.  Therefore, I do not recommend an enhancement on these grounds.

[6] The Court provided two examples: "[i]t could happen to an attorney who represents a pedophile attacking a sexual offender law registration on Due Process grounds, or perhaps an attorney in a small Bible Belt town who succeeds in having a popular public religious practice enjoined as contrary to the Establishment Clause." *Id.* at 1234.  The Court, however, declined to decide whether these circumstances would be proper bases for enhancing the lodestar amount. *Id.*

there are others who applauded their efforts. Plaintiffs' lead counsel has brought other controversial lawsuits [*see* DE 122-1, ¶ 4], and in the process has earned the respect of many in this diverse community, and from all appearances has maintained a very active law practice. Plaintiffs have not given this Court any evidence that their attorneys' practice and income have been diminished because of this lawsuit, and they have otherwise failed to show that this case presents that "rare" and "exceptional" circumstance that would warrant enhancement. Therefore, I do not recommend that the lodestar be enhanced.

### 4.      Expert Fees

Plaintiffs seek to recover the expert fees of Louis M. Jepeway, Jr. and G. Richard Strafer, Esq., who submitted expert affidavits supporting Plaintiffs' Motion for attorneys' fees. [DE 122, p. 13]. Section 1988 provides for expert fees as part of the attorneys' fees award. ("In awarding attorney's fees . . . the court, in its discretion, may include expert fees as part of the attorney's fees."). As noted above, a prevailing party may recover fees for litigating a motion for attorneys' fees. *See Johnson*, 706 F.2d at 1207 (federal law allows a party to recover fees for time spent litigating fees). Additionally, Local Rule 7.3.A requires that a motion for attorneys' fees be supported by the affidavit of an expert witness. Notably, Defendant does not challenge the reasonableness of the experts' fees. Accordingly, for these reasons, I recommend that Plaintiffs recover the full amount of expert fees sought: $3,187.50 for Mr. Jepeway and $10,450.00 for Mr. Strafer, for a total of **$13,637.50** in expert fees.

### 5. Litigation Expenses

Plaintiffs further seek to recover their litigation expenses in the amount of $22,218.16.[7] [DE 122, p. 14]. Under § 1988, a prevailing party is entitled to recover its expenses as part of the costs of litigation. *See Dowdell v. City of Apopka,* 698 F.2d 1181, 1192 (11th Cir. 1983) (all reasonable expenses with the exception of routine office overhead may be taxed as costs under § 1988). Recovery of expenses, therefore, is not limited to Federal Rule of Civil Procedure 54(d) and 28 U.S.C. § 1920. *Id.* at 1188-89.

I have reviewed Plaintiffs' claim of litigation expenses [DE 122-1, pp. 34-39], have considered Mr. Strafer's opinion that these expenses are reasonable [DE 122-8, ¶ 27], note that Defendant has not objected to the reasonableness of the expenses, and find that the listed expenses are reasonable. I therefore recommend that Plaintiffs recover the full amount.

### B. Bill of Costs

Federal Rule of Civil Procedure 54(d) provides that a prevailing party is entitled to recover costs as a matter of course, while 28 U.S.C. § 1920 enumerates the costs that may be taxed. *See Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 482 U.S. 437, 441-42 (1987); *Maris Distributing Co. v. Anheuser-Busch, Inc.*, 302 F.3d 1207, 1225 (11th Cir. 2002) (noting that the court "abuses its discretion if it awards costs pursuant to Fed.R.Civ.P. 54 in excess of those permitted by Congress under 28 U.S.C. § 1920"). As already noted, Plaintiffs indisputably are the prevailing parties. Thus, the only issue is the amount of costs to be

---

[7] This amount does not include the costs listed on Plaintiffs' Bill of Costs [DE 123], which are addressed below.

12

awarded.

### 1. Fees to the Clerk

Plaintiffs seek to recover a total of **$350.00** in filing fees paid to the clerk. [DE 123, p. 1; 123-3 p. 1]. Recovery of fees to the clerk is authorized under 28 U.S.C. § 1920(1); therefore Plaintiff is entitled to the full amount.

### 2. Fees for service of summons and subpoena

Plaintiffs are entitled to recover private process server fees. *See For Play Ltd. v. Bow To Stern Main., Inc.*, Case No. 05-22002-CIV-KING, 2006 WL 3662339, at *12 (S.D. Fla. Nov. 6, 2006). Plaintiffs seek a total of **$1,139.97** of process-server fees [DE 123, p. 1; 123-3, pp. 2, 10, 11, 16-19] and are entitled to the full amount.

### 3. Court reporter fees and transcript costs

Plaintiffs seek to recover **$223.80** for transcript costs. [DE 123, p. 1; 123-3, pp. 6, 15]. Taxation of transcript costs is authorized by § 1920(2), so long as the transcripts were "necessarily obtained for use in the case." 28 U.S.C. § 1920(2). Defendant does not dispute that these transcripts were necessary to the case, therefore Plaintiffs should recover the full amount.

### 4. Copying costs

Plaintiffs ask to recover **$5,122.25** in copying costs. [DE 123, p. 1]. Copying costs are recoverable under § 1920(4) if the copies were necessarily obtained for use in the case. *See For Play Ltd.*, 2006 WL 3662339, at *10. It is not necessary that the photocopies be

13

used at trial or in any papers filed with the court to be taxable. *United States Equal Employment Opportunity Commission v. W & O, Inc.*, 213 F.3d 600, 623 (11th Cir. 2000).

Plaintiffs' counsel gave the Court a list of their copying charges, but did not disclose the price charged per page, [DE 123-4, pp. 27-32], which makes it difficult for the Court to assess the reasonableness of those charges. Certain coping charges have been found to be unreasonably high, *see e.g. James v. Wash Depot Holdings, Inc.*, 242 F.R.D. 645, 651 (S.D. Fla. 2007) (requested $0.19 and $0.15 amounts per page were found to be "unnecessarily high."). Here, however, Defendant, who is highly familiar with the circumstances of this case, did not object to these copy costs, nor did Defendant object that any of the copies were unnecessary. On this record, I recommend that Plaintiffs recover the full amount sought.

### 5. Postage/Courier Costs

Plaintiffs seek to recover **$414.78** in postage and courier costs. [DE 123-1, p. 1; 123-4, pp. 27-30]. Under § 1920, Plaintiffs would not be entitled to recover these costs. *See Duckworth v. Whisenant*, 97 F.3d 1393, 1399 (11th Cir. 1996) ("costs such as general copying, computerized legal research, postage, courthouse parking fees and expert witness fees . . . are clearly nonrecoverable"). However, as detailed above, under § 1988 Plaintiffs are entitled to recover litigation expenses that go beyond those normally recoverable under § 1920. Accordingly, I recommend that Plaintiffs recover the full amount pursuant to § 1988.

### 6. Telephone and Facsimile Services

Recovery of telephone and facsimile charges is not provided for under § 1920. However, like the postage costs above, Plaintiffs are entitled to recover telephone and facsimile costs pursuant to § 1988. I therefore recommend that Plaintiffs are entitled to recover **$823.20** for these costs. [*See* DE 123-1, p. 1].

In sum, I recommend that Plaintiff be awarded **$8,074.00** in costs.

### III. Conclusion

This Court **RECOMMENDS** that Plaintiffs' Verified Motion for Attorneys' Fees, Costs and Expenses [DE 121, 122], be **GRANTED IN PART** and that the Court enter final judgment against Defendant, in favor of Plaintiffs, for **$320,522.64** in attorneys' fees, **$13,637.50** in expert fees, and **$22,218.16** for litigation expenses.

It is further **RECOMMENDED** that Plaintiffs' Bill of Costs [DE 123], be **GRANTED** and that the Court enter final judgment against Defendant, in favor of Plaintiffs, for costs in the amount of **$8,074.00.**

### IV. Objections Period

Pursuant to Magistrate Rule 4(a), the parties may file written objections to this Report and Recommendation with the Honorable Alan S. Gold **no later than March 25, 2010**. Failure to timely file objections shall bar the parties from attacking on appeal any factual findings contained herein. *See RTC v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th

Cir. 1993); *LoConte v. Dugger*, 847 F.2d 745, 749-50 (11th Cir. 1988).

RESPECTFULLY SUBMITTED in chambers at Miami, Florida, this 16th day of March, 2010.

_____
CHRIS MCALILEY
UNITED STATES MAGISTRATE JUDGE


*Copies to:*   The Honorable Alan S. Gold
All counsel of record